## The George B. Curd Equipment Company v. The Stave and Timber Corporation.

(Decided June 10, 1924.)

### Appeal from Kenton Circuit Court.

Sales—Remedies of Buyer where Shipment Made to Wrong Place. —Where shipment was made to wrong place and refused by buyer's customer, buyer could either refuse to have anything to do with it until tendered at proper place, or waive error and accept delivery, and was liable for demurrage, and loss, where, instead of refusing to have anything to do with shipment, it sold it and had it delivered to purchaser.

ALLEN C. ROUDEBUSH and DICKERSON & DICKERSON for appellant.

S. D. ROUSE, POGUE, HOFFHEIMER & POGUE and W. A. PRICE for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

On February 26, 1920, the appellee, the Stave and Timber Corporation, being the owner of a number of rails in a railroad track, which it was removing, wrote to the George B. Curd Equipment Company asking it to make an offer for the rails. On March 1st the appellee telegraphed the appellant this offer: "For immediate acceptance and subject to our inspection offer forty-two dollars per gross ton for your fifty-six pound relaying rail with bars and spikes weighed in, freight allowed Norfolk, Virginia." On the same day appellee accepted the offer, as follows: "Your offer received and accepted over one hundred tons rails in our yard at Berkeley outskirts Norfolk ready for inspection." On April 20th appellant wrote appellee saying that it had sold the rails purchased from it to H. M. Foster Company of Baltimore, Maryland, and same were to be shipped via Pennsylvania railroad, notify H. M. Foster Company. Terms: Sight draft against bill of lading, and "as these drafts are paid by

the H. M. Foster Company you are to remit us $3.00 per ton." This letter was receiven by appellee April 22nd and it agreed to the proposition and billed the rails to the H. M. Foster Company at $45.00 a ton. The Foster Company wrote appellee on April 29th that they would take the rails "subject to Pittsburg Testing Laboratory's inspection," as was specified in their contract with appellant, and in that letter they also said: "We sent them order covering shipment of these rails to Baltimore, but our Mr. McCoy, who was at the plant at Berkeley yesterday, has now arranged, after inspection, to divert them, account another order." The change in the order for shipment did not reach appellee until May 18th, and in the meantime two cars of rails had been shipped to Baltimore. Appellee insisted that it had not sold the rails subject to Pittsburg Testing Laboratory's inspection and a considerable correspondence followed. H. M. Foster Company refused to receive the rails at Baltimore on two grounds:

1. They did not come up to the standard indicated.

2. They were shipped to Baltimore in violation of instructions.

A long correspondence ensued. The remainder of the rails were delivered at Norfolk, Virginia, and accepted and paid for. These two cars remained at Baltimore for months; finally appellant sold them to another customer and they were delivered to this customer by the appellee, who received from the purchaser the price.

After all this on November 16, 1920, appellant sued appellee to recover $872.56, being the balance coming to it for the rails at $3.00 a ton, less what had been paid. There were in round numbers 392 tons of the rails, which at $3.00 a ton came to $1,176.85, and only $304.29 had been paid to it. Appellee had been required to pay $1,694.88 demurrage on these two cars, which it pleaded as a counterclaim. On final hearing the circuit court gave judgment in favor of appellee for $822.32, and dismissed appellant's petition; hence this appeal.

There is no dispute in the case that before April 29th shipping orders had been given for these rails to be shipped to Baltimore, Maryland, to H. M. Foster Company. While it may have been gathered from the letters that the shipping directions had been changed, they are so vague that we can well understand why these two cars were shipped to Baltimore, in view of the fact that the letter containing the clear change of shipping directions was not received by appellee until May 18th, or at least

a week after these cars had been shipped. But, however this may be, the contract for the sale of the rails was a contract between appellant and appellee; the delivery of the rails to H. M. Foster Company by appellee was a subsequent arrangement for the mutual accommodation of both parties.. H. M. Foster Company was justified in refusing to take rails that did not come up to the standard set by their contract with appellee. When H. M. Foster Company refused to take these rails and appellant claimed they had been shipped to Baltimore in violation of its orders, it had open to it two courses:

1. It could refuse to have anything to do with the rails until they were tendered at Norfolk, Virginia, where it claimed they should have been delivered.

2. It could have waived the error in the place of delivery and accept the rails at Baltimore.

It did not follow the first course. On the contrary, knowing the rails were at Baltimore and knowing all the facts, it sold the rails to another purchaser there, and had them delivered to this purchaser. This was an acceptance of the rails at Baltimore, and having accepted the rails there, it must bear the loss.

In view of the whole correspondence, the loss was by reason of its course and not by reason of any fault or failure of appellee.

Judgment affirmed.